1  ERIC P. ISRAEL (State Bar No. 132426)
   *eisrael@dgdk.com*
2  SONIA SINGH (State Bar No. 311080)
   *ssingh@dgdk.com*
3  DANNING, GILL, DIAMOND & KOLLITZ, LLP
   1900 Avenue of the Stars, 11th Floor
4  Los Angeles, California 90067-4402
   Telephone:   (310) 277-0077
5  Facsimile:    (310) 277-5735

6  Attorneys for Brad D. Krasnoff, Chapter 7 Trustee

7

8              **UNITED STATES BANKRUPTCY COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10                  **LOS ANGELES DIVISION**

| | |
|---|---|
| 11  In re | Case No. 2:17-bk-18768-BB |
| 12  SUNG HEE RYOO, | Chapter 7 |
| 13            Debtor. | **TRUSTEE'S NOTICE OF MOTION AND MOTION TO:  (1) APPROVE SALE OF REAL PROPERTY COMMONLY KNOWN AS 5125 HAROLD WAY #108, LOS ANGELES, CALIFORNIA FREE AND CLEAR OF LIENS AND CLAIMS, AND (2) AUTHORIZE PAYMENT OF REAL ESTATE BROKERS' COMMISSIONS; MEMORANDUM OF POINTS AND AUTHORITIES, DECLARATIONS OF BRAD D. KRASNOFF AND JANE SCHORE AND REQUEST FOR JUDICIAL NOTICE IN SUPPORT THEREOF** |
| | Date:    April 4, 2018
Time:    10:00 a.m.
Place:    Courtroom "1539"
           255 E. Temple Street
           Los Angeles, California 90012 |

24  ///

25  ///

26  ///

27  ///

28

1470919.1  1718768A                              1

**NOTICE IS GIVEN** that on April 4, 2018, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom "1539" of the United States Bankruptcy Court, 255 E. Temple Street, Los Angeles, California, Brad D. Krasnoff, the Chapter 7 trustee (the "Trustee") for the estate of Sung Hee Ryoo (the "Debtor"), will and hereby does move the Court under 11 U.S.C. § 363 and Local Bankruptcy Rules 6004-1(c) and 9013-1 for an order confirming the sale by the Trustee of the parcel of real property commonly known as 5125 Harold Way #108, Los Angeles, California (the "Property") to Rebecca Lee Revenig and Noah Alexander Dorsey (collectively the "Buyers"), for $470,000, with a $9,200 credit through escrow (the "Motion"). The sale is to be "as is" and "where is" with no warranty or recourse whatsoever. The Court may entertain higher and better bids at the time of the hearing on the Motion.

The Motion is based upon this Motion and the attached Memorandum of Points and Authorities, Declaration of Brad D. Krasnoff, Declaration of Jane Schore and Request for Judicial Notice; the separately filed notice of the Motion; the papers and pleadings in the Debtor's bankruptcy case; and such other evidence that may be presented at the hearing.

Pursuant to Local Bankruptcy Rule 6004-1(c), the Trustee provides the following information:

A.    The date, time and place of the hearing on the Motion are set forth above.

B.    The Buyers are Rebecca Lee Revenig and Noah Alexander Dorsey. The Buyers' address is 1440 N Alta Vista, Los Angeles, CA 90046.

C.    The Property to be sold consists of the Trustee's right, title, and interest in a condominium unit commonly known as 5125 Harold Way #108, Los Angeles, California.

D.    Title to the Property is vested in "Sung Hee Ryoo, a single woman."

E.    The terms and conditions of the sale are that the Property is being sold for $470,000, less a credit of $9,200 credit through escrow, "as is," "where is," and with no warranty or recourse whatsoever, subject to higher and better bids. There are no contingencies other than Court approval.

F.    The Trustee intends to sell the Property free and clear of all liens and claims (collectively the "Subject Liens") as provided below, with those liens removed from the Property,

1  and the allowed amounts of certain liens and claims to be paid through escrow, and any disputed

2  sums to attach to like amounts of the net sale proceeds, with the same force, effect, validity and

3  priority that they had as of the petition date as against the Property as follows:

4     1. Allowed real property taxes due for the Property to the County of Los

5  Angeles (the "County").   The Trustee will pay through escrow all undisputed sums asserted by the

6  County.

7     2. A deed of trust recorded on or about August 3, 2010, on or about as

8  instrument no. 10-1073579 securing an original obligation of $287,910 in favor of Nationstar

9  Mortgage, LLC, which mortgage most recently was assigned to Nationstar Mortgage LLC, a

10 Delaware Limited Liability Company ("Nationstar") per instrument no. 17-31253 (the "Nationstar

11 Lien").  The Trustee will pay through escrow all undisputed sums asserted by Nationstar.

12    3. Assessments of the Sun East HOA (the "HOA") through the date of close of

13 the sale.  The Trustee will pay through escrow all undisputed sums asserted by the HOA.

14   G. The proposed sale is subject to overbids, and the Trustee is requesting that the

15 Court approve the following overbid procedures:

16   The proposed sale is subject to higher and better bids.  Overbidders must appear at the

17 hearing, submit the overbid before or at the hearing, and deposit with the Trustee before or at the

18 hearing a cashier's check in the amount of $14,100 payable to "Brad D. Krasnoff, Trustee."  The

19 minimum initial overbid amount is $475,000, and bidding, if any, shall proceed in increments of

20 $1,000.  The Trustee holds discretion in accepting or rejecting all overbids.

21   The prevailing overbidder's deposit shall be nonrefundable in the event that the Court

22 confirms the sale to that party but, for any reason whatsoever, the party fails to close the sale

23 timely.  The overbidding party will be bound by all of the terms of the proposal set forth in the

24 agreement proposed for confirmation except as to price, without contingencies, including any

25 financing contingency, and shall close the escrow no more than 60 but not less than 30 calendar

26 days after the entry of an order approving the motion.

27   The Trustee also proposes that the Court confirm a back-up buyer so that, in the event that

28 the prevailing buyer fails to close the sale timely, the Trustee may sell the Property to the back-up

1    buyer for the amount of such back-up buyer's last bid.  The Trustee is authorized to hold the back-

2    up buyer's deposit pending the closing of the sale to the prevailing bidder.  If the prevailing bidder

3    closes the sale, the Trustee will immediately return the back-up buyer's deposit.  If the prevailing

4    buyer fails to close the sale timely, the back-up buyer will be bound by all of the terms of the

5    proposal set forth in the agreement proposed for confirmation except as to price, without

6    contingencies, including any financing contingency, and shall close the escrow within 10 calendar

7    days after written notice from the Trustee that the prevailing buyer has defaulted.  The back-up

8    buyer's deposit shall be nonrefundable in the event that the back-up buyer fails to close the sale

9    timely.

10         H.       The estimated net sale proceeds to be received by the bankruptcy estate are

11    $63,450, calculated as follows:

| | | | |
|---|---|---|---|
| Purchase Price | | | $470,000 |
| Less: | Bank Lien | | ($304,000) |
| | Costs of Sale (6%) | | ($28,200) |
| | Credit | | ($9,200) |
| Subtotal | | | $126,900 |
| Less: | Homestead Exemption (50% of equity) | | ($63,450) |
| Net Equity | | | $63,450 |

19         I.       The Trustee also seeks authority from the Court to pay commissions of the

20    broker(s) through escrow aggregating 4% as follows:  2% to Coldwell Banker as the Trustee's

21    broker in connection with the closing of this sale; and 2% to RE/MAX Olson & Associates as the

22    Buyer's broker in connection with the closing of this sale.  If a sale of the Property is confirmed as

23    a result of a higher and better offer to overbidder(s) represented by different broker(s), then the

24    proposed commission for the Property of 4% of the purchase price will be split 2% to Coldwell

25    Banker, and 2% to the broker for the successful overbidder.

26         J.       The Trustee's accountants have advised that there will be no tax consequences to

27    the bankruptcy estate as a result of the proposed sale.

28    / / /

1    K.    Any objection to the Motion must be filed and served not later than 14 days before

2    the date of the hearing.

3    L.    The Trustee also seeks a Court ruling that the party(ies) to whom the Court

4    confirms the sale and any backup buyers are good faith purchasers for purposes of 11 U.S.C. §

5    363(m).

6    M.    If no objections are made to the proposed sale, the Trustee requests that the Court

7    waive the applicability of Federal Rule of Bankruptcy Procedure 6004(h).

8    **NOTICE IS GIVEN** that pursuant to Local Bankruptcy Rule 9013-1(f), each interested

9    party opposing, joining in, or responding to the Motion must, not later than 14 days before the date

10    of the hearing, file with the Clerk of the Bankruptcy Court and serve upon the Trustee's general

11    counsel, Eric P. Israel and Sonia Singh, Danning, Gill, Diamond & Kollitz, LLP, 1900 Avenue of

12    the Stars, 11th Floor, Los Angeles, California 90067-4402, and the United States Trustee, 915

13    Wilshire Blvd., Suite 1850, Los Angeles, California 90017, either: (i) a complete written statement

14    of all reasons in opposition thereto or in support or joinder thereof, declarations and copies of all

15    photographs and documentary evidence on which the responding party intends to rely, and any

16    responding memorandum of points and authorities; or (ii) a written statement that the Motion will

17    not be opposed.

18    Pursuant to Local Bankruptcy Rule 9013-1(h), failure to timely file and serve papers may

19    be deemed by the Court to be consent to the granting of the Motion.

20

21    DATED: March 6, 2018                DANNING, GILL, DIAMOND & KOLLITZ, LLP

22

23                                        By: _____

24                                        ERIC P. ISRAEL

25                                        Attorneys for Brad D. Krasnoff, Chapter 7 Trustee

26

27

28

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

3

## I.

4

## FACTUAL STATEMENT

5 **A.**    **Bankruptcy Background**

6        This case was commenced on or about July 19, 2017 (the "Petition Date"), when Sun Hee

7 Ryoo (the "Debtor") filed a voluntary petition for relief under Chapter 7 of title 11 of the United

8 States Code (the "Bankruptcy Code").

9        Brad D. Krasnoff was subsequently appointed as the Chapter 7 Trustee for the Debtor's

10 estate and continues to serve in that capacity for the benefit of creditors.

11 **B.**    **The Property**

12        The Debtor scheduled the Property as an asset valued at $405,000.  The Property is a

13 condomium unit commonly known as 5125 Harold Way #108, Los Angeles, California.  Title to

14 the Property is vested in "Sung Hee Ryoo, a single woman."  The Los Angeles County Tax

15 Assessor has assigned assessor's parcel number 5544-013-044 to the Property.

16        The Debtor originally claimed a $100,000 homestead exemption in the Property, but

17 contacted the Trustee shortly after the 341(a) meeting and offered to split the equity with the

18 Trustee.  A stipulation  thereon was filed on or about February 23, 2018 (*docket no. 21*), and an

19 order thereon entered on or about February 26, 2018 (*docket no. 26*).

20        The Debtor scheduled a lien against the Property for $304,000 in favor of Nationstar

21 mortgage.

22 **C.**    **The Real Estate Brokers and their Marketing Efforts for the Property**

23        Pursuant to an order of the Court entered on or about February 20, 2018 (*docket no. 24*), the

24 Trustee employed Coldwell Banker (the "Broker") as his real estate broker with an aggregate

25 commission of 4%.  A copy of the order is attached hereto as Exhibit "3" to the RJN.  The Broker

26 listed the Property on the Multiple Listing Service for $385,000.  The Broker also showed the

27 Property to potential purchasers.

28 / / /

1    The Broker will also post the proposed sale information on the Multiple Listing Service.

2  **D.    The Proposed Sale**

3    The Trustee received through the Broker an offer from Rebecca Lee Revenig and Noah

4  Alexander Dorsey (collectively the "Buyers") to purchase the Property for $485,000.  The Trustee

5  accepted the offer, subject to Court approval and overbids.  However, after inspection the Buyers

6  requested, and the Trustee agreed, to a reduction of the purchase price to $470,000 less a credit

7  through escrow of $9,200.  A copy of the Purchase and Sale Agreement including the amendment

8  are attached to the Declaration of Brad Krasnoff collectively as Exhibit "1".  The Buyer is

9  represented by RE/MAX Olson Associates.

10    The proposed sale of the Property is "as is," "where is," with no warranty or recourse

11  whatsoever, subject only to overbid and Court approval.  The proposed sale was reached via arms-

12  length negotiations.

13  **E.    Identity of Liens and Claims against the Property**

14    The Trustee has obtained a preliminary title report on the Property dated February 5, 2018

15  (the "Title Report").  A copy of the Title Report is attached to the Krasnoff Declaration as Exhibit

16  "2".  According to the Title Report, the following liens and claims are of record against the

17  Property:

18    1.    Liens for real property taxes in favor of the County of Los Angeles (the

19  "County").

20    2.    A deed of trust recorded on or about August 3, 2010, on or about as

21  instrument no. 10-1073579 securing an original obligation of $287,910 in favor of Nationstar

22  Mortgage, LLC, which mortgage most recently was assigned to Nationstar Mortgage LLC, a

23  Delaware Limited Liability Company ("Northstar") per instrument no. 17-31253 (the "Nationstar

24  Lien").

25    3.    Assessments of the Sun East HOA (the "HOA") through the date of close of

26  the sale.

27  / / /

28  / / /

1470919.1  1718768A                                  7

**F.    Proposed Treatment of Liens and Other Interests**

The Trustee intends to sell the Property free and clear of all liens and claims (collectively the "Subject Liens") as provided below, with all of the Subject Liens removed from the Property, and the allowed amounts of the liens to be paid through escrow, and any disputed sums contained in demands of the County, Nationstar or the HOA to attach to like amounts of the net sale proceeds, subject to the costs of sale, with the same force, effect, validity and priority that they had as of the Petition Date as against the Property.

The Trustee further requests authority to pay any of the disputed items if he no longer disputes them.

**G.    Proposed Overbid Procedures**

The Trustee requests that the Court approve the following procedure for overbids:

The proposed sale is subject to higher and better bids. Overbidders must appear at the hearing, submit the overbid before or at the hearing, and deposit with the Trustee before or at the hearing a cashier's check in the amount of $14,100 payable to "Brad D. Krasnoff, Trustee." The minimum overbid amount is $475,000, subject to the $9,200 credit, and bidding, if any, shall proceed in increments of $1,000. The Trustee holds discretion in accepting or rejecting all overbids.

The prevailing overbidder's deposit shall be nonrefundable in the event that the Court confirms the sale to that party but, for any reason whatsoever, the party fails to close the sale timely. The overbidding party will be bound by all of the terms of the proposal set forth in the agreement proposed for confirmation except as to price, without contingencies, including any financing contingency, and shall close the escrow no more than 60 but not less than 30 calendar days after the entry of an order approving the motion.

The Trustee also proposes that the Court confirm a back-up buyer so that, in the event that the prevailing buyer fails to close the sale timely, the Trustee may sell the Property to the back-up buyer for the amount of such back-up buyer's last bid. The Trustee is authorized to hold the back-up buyer's deposit pending the closing of the sale to the prevailing bidder. If the prevailing bidder closes the sale, the Trustee will promptly return the back-up buyer's deposit. If the prevailing

1    buyer fails to close the sale timely, the back-up buyer will be bound by all of the terms of the

2    proposal set forth in the agreement proposed for confirmation except as to price, without

3    contingencies, including any financing contingency, and shall close the escrow within 10 calendar

4    days after written notice from the Trustee that the prevailing buyer has defaulted.  The back-up

5    buyer's deposit shall be nonrefundable in the event that the back-up buyer fails to close the sale

6    timely.

7    **H.    Payment of Commissions to Real Estate Brokers through Escrow**

8          The Trustee seeks an order from the Court authorizing him to pay commissions of the real

9    estate brokers through escrow.

10          The Trustee proposes to pay an aggregate commission of 4% of the purchase price of the

11    Property to the real estate brokers as follows:  2% to Coldwell Banker, as the Trustee's Broker in

12    connection with the closing of this sale; 2% to RE/MAX Olson Associates, as Buyers' broker in

13    connection with the closing of this sale.  If a sale of the Property is confirmed as a result of a higher

14    and better offer to overbidder(s) represented by different broker(s), then the proposed commission

15    for the Property of 4% of the purchase price will be split 2% to Coldwell Banker, and 2% to the

16    broker for the successful overbidder.

17    **I.    Estimated or Possible Tax Consequences to the Bankruptcy Estate**

18          The Trustee's accountants have advised that there will be no tax consequences to the

19    bankruptcy estate as a result of the proposed sale.

20    **J.    Good Faith Finding**

21          The Trustee also requests that the Court make a finding that the confirmed Buyers and any

22    back-up bidder(s) are good-faith purchasers within the meaning of 11 U.S.C. § 363(m).

23    **K.    Notice to Creditors and Potential Overbidders**

24          The within notice of Motion will be served on all creditors and interested parties as

25    reflected on the attached proof of service.  The Trustee requests that the Court approve the form

26    and manner of the notice.

27    / / /

28    / / /

1470919.1  1718768A                                              9

## II.

## THE COURT SHOULD APPROVE THE SALE OF THE PROPERTY

## FREE AND CLEAR OF LIENS AND CLAIMS

**A.      The Property Constitutes Property of the Bankruptcy Estate Subject to Sale**

Pursuant to Bankruptcy Code § 541(a)(1), property of a bankruptcy estate includes all legal and equitable interests of the Debtor in property.

**B.      The Sale is in the Best Interest of the Estate and Its Creditors**

Under the Bankruptcy Code, bankruptcy courts are authorized to permit the Trustee to conduct a sale of estate property outside of the ordinary course of business if such sale is in the best interests of the estate and its creditors.  See, e.g., In re Huntington, Ltd., 654 F.2d 578 (9th Cir. 1981); In re Equity Funding Corp., 492 F.2d 793 (9th Cir. 1974); In re Canyon Partnership, 55 B.R. 520 (Bankr. S.D. Cal. 1985).

A trustee's duties in liquidating the assets of the estate require that the trustee sell the property of the debtor if there is equity.  The Trustee believes that the proposed conduct of sale of the Property is the best method by which to maximize the value of the estate's interest in the Property in order to pay expenses of administration and the claims of creditors.

Here, the Trustee retained a licensed real estate broker to list, market and aid him in selling the Property.  The Broker listed the Property on the Multiple Listing Service, and since approximately November 2017, have marketed the Property on behalf of the Trustee.  With the aid of his Broker, the Trustee obtained an offer from the Buyers of $485,000.  However, after their inspection the Buyers requested, and the Trustee agreed, to reduce the purchase price to $470,000 with a $9,200 credit through escrow.  As set forth in the Declaration of Jane Schore, the price was arrived at following arms-length negotiations.

The sale is subject to overbids, so any and all qualified parties wishing to purchase the Property for a higher price may do so.

As a result, the Trustee believes that the proposed sale is in the best interests of the estate and its creditors and should be approved.

/ / /

**C.      The Property May be Sold Free and Clear of Liens and Claims**

Section 363(f) provides that, upon certain conditions, the Trustee may sell property free and clear of a lien or interest in such property.

Section 363(f) states the conditions as follows:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—
>
> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4) such interest is in bona fide dispute; or
>
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

In this case, the Trustee seeks to sell the Property free and clear of all liens and claims, which will be removed from the Property.  The purchase price for the Property will be at least $470,000, less a $9,200 credit through escrow, which is sufficient to satisfy the lien for real property taxes and the Nationstar Lien.  11 U.S.C. § 363(f)(3).  Moreover, all of the lienholders could be compelled to accept a money satisfaction of their interests.  11 U.S.C. § 363(f)(5).  The Trustee seeks authority to pay the allowable and undisputed amounts asserted by the County, Nationstar and the HOA from escrow, with disputed amounts, if any, attaching to like amounts of the net sale proceeds with the same force, effect, validity and priority that they had as to the Property on the Petition Date.

**D.      Penalties**

Finally, the Trustee may avoid a lien that secures a claim of a kind specified in § 726(a)(4) of the Code which includes claims:

> for any . . . penalty . . . arising before the earlier of the order for relief or the appointment of a trustee, to the extent that such . . . penalty . . . are not compensation for actual pecuniary loss suffered by the holder of such claim.

1    11 U.S.C. § 724(a)(4).

2    Pursuant to § 363(f)(4), the Property may be sold free and clear of asserted claims based on

3    penalty charges, with those disputed amounts attaching to the net sale proceeds as provided above.

4    **E.    Good Faith Purchaser Finding**

5    A purchaser of property, and the Trustee, are protected from the effects of reversal on

6    appeal of the authorization to sell as long as the Court finds that the purchaser acted in good faith

7    and the appellant fails to obtain a stay of the sale.  11 U.S.C. § 363(m).  A good faith purchaser is

8    one who buys in good faith and for value.  Ewell v. Diebert (In re Ewell), 958 F.2d 276, 281 (9th

9    Cir. 1992).  Although the Code does not define "good faith," courts have provided guidance as to

10    the appropriate factors to consider.  See id. (lack of good faith generally shown by fraud, collusion

11    between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair

12    advantage of other bidders); In re Pine Coast Enters., Ltd., 147 B.R. 30, 33 (Bankr. N.D. Ill. 1992)

13    ("[t]he requirement that a purchaser act in good faith speaks to the integrity of its conduct in the

14    course of the sale proceeding."); Kham and Nate's Shoes No. 2 v. First Bank, 908 F.2d 1351, 1355

15    (7th Cir. 1990) ("[t]he purpose of Section 363(m) is to disable courts from backtracking on

16    promises with respect to bankruptcy sales in the absence of bad faith.").

17    Here, the Property has been and continues to be listed on the Multiple Listing Service, and

18    notice of the Property's sale has been posted on the Trustee's attorneys' website, www.dgdk.com,

19    which has a special section reserved for bankruptcy estate sales, and the Clerk of the United States

20    Bankruptcy Court's website.  The Trustee has negotiated in good faith with the Buyers.  Moreover,

21    the sale is subject to overbid, and the notice of the motion has been served on all creditors and

22    interested parties.  Thus, the Trustee requests that the Court make a finding that the confirmed

23    Buyer(s) and any back-up buyer(s) are good faith purchasers of the Property within the meaning of

24    § 363(m).

25    / / /

26    / / /

27    / / /

28    / / /

1470919.1  1718768A                              12

### III.

### THE COURT SHOULD WAIVE THE EFFECTS OF

### FEDERAL RULE OF BANKRUPTCY PROCEDURES 6001(H)

In the event that there are no objections to the sale, the Trustee respectfully requests that the Court waive the applicability of Federal Rule of Bankruptcy Procedure 6001(h).

### IV.

### CONCLUSION

Based upon the foregoing, the Trustee respectfully requests that the Court:

1.      confirm the proposed sale of all right, title and interest of the Trustee in the Property to the Buyer on the indicated terms, subject to any higher and more favorable bids;

2.      approve the overbid procedures;

3.      direct that the sale be free and clear of all liens and claims except as otherwise provided;

4.      authorize the Trustee to pay the costs of sale incurred in selling the Property, including the real estate brokers' commissions, through escrow;

5.      authorize the Trustee, if he no longer disputes any of the disputed sums, in whole or in part, to pay said sums from the net sale proceeds;

6.      make a finding that the confirmed Buyers and any backup buyer(s) are good faith purchasers of the Property within the meaning of § 363(m) of the Code;

7.      waive the applicability of Federal Rule of Bankruptcy Procedure 6004(h);

8.      approve the form and manner of notice provided by the Trustee of the sale; and

9.      provide such other and further relief as the Court deems just and proper.

DATED: March 7, 2018                DANNING, GILL, DIAMOND & KOLLITZ, LLP

By: _____
ERIC P. ISRAEL
Attorneys for Brad D. Krasnoff, Chapter 7 Trustee

1470919.1  1718768A                              13

# DECLARATION OF BRAD D. KRASNOFF

# DECLARATION OF BRAD D. KRASNOFF

I, Brad D. Krasnoff, declare:

1.      I am the Chapter 7 Trustee of the estate of Sung Hee Ryoo (the "Debtor"). I have personal knowledge of the facts stated in this declaration, except those matters that are based upon my information and belief, and as to such matters, I believe such matters to be true. If called as a witness, I could testify competently to these facts.

2.      This declaration is being filed in support of my Motion to: (1) Approve Sale of Real Property Commonly Known as 5125 Harold Way #108, Los Angeles, California Free and Clear of Liens and Claims, and (2) Authorize Payment of Real Estate Brokers' Commissions (the "Motion").

3.      I have read the Motion, which my counsel has prepared on my behalf. I believe that the sale of the real property commonly known as 5125 Harold Way #108, Los Angeles, California (the "Property") for $470,000, less a $9,200 credit through escrow, subject to overbid, is a fair price based upon evaluation and advice from my real estate broker, Coldwell Banker. Rebecca Lee Revenig and Noah Alexander Dorsey (collectively the "Buyers") were procured as a result of the efforts of my real estate brokers, after arms-length negotiations. I have no independent knowledge of or familiarity with the Buyers.

4.      Attached hereto, marked as Exhibit "1", and incorporated herein by this reference is a true and correct copy of the complete Purchase and Sale Agreement between me and the Buyers including one amendment (the "Agreement").

5.      Attached hereto, marked as Exhibit "2", and incorporated herein by this reference is a true and correct copy of the preliminary title report (the "Title Report") that I received from the escrow company handling the proposed sale.

6.      Through my counsel, I have arranged for notice of the sale of the Property to be posted on the website of my counsel's law firm, and on the website of the United States Bankruptcy Court.

7.      Barring receipt of an overbid, I therefore believe that the proposed sale and overbid procedures are in the best interests of the estate and its creditors, and should be approved.

1      8.    My proposed accountants have advised me that there will be no adverse tax

2  consequences to the bankruptcy estate as a result of the sale.

3

4      I declare under penalty of perjury under the laws of the United States of America that the

5  foregoing is true and correct.

6      Executed at Los Angeles, California on March 6, 2018.

7

8                                     BRAD D. KRASNOFF

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# DECLARATION OF JANE SCHORE

1

## DECLARATION OF JANE SCHORE

2        I, Jane Schore, declare as follows:

3        1.      I am and have been a real estate salesperson licensed with the State of California

4    since 1988.  I am presently with Coldwell Banker Realty, the duly-employed real estate broker for

5    Brad D. Krasnoff, the Chapter 7 trustee (the "Trustee") for the estate of Sung Hee Ryoo (the

6    "Debtor").  I have personal knowledge of the matters set forth herein, except those matters that are

7    based upon my information and belief, and as to such matters, I believe them to be true.  If called

8    as a witness, I could and would testify competently to the matters set forth herein.

9        2.      Based upon my inspection of the condominium located at 5125 Harold Way #108,

10   Los Angeles, California (the "Property").  Coldwell Banker listed the Property on the Multiple

11   Listing Service for $385,000.

12       3.      In addition to listing the Property as described here, I showed the Property on many

13   occasions to prospective buyers.

14       4.      I assisted the Trustee in obtaining an offer from Rebecca Lee Revenig and Noah

15   Alexander Dorsey (collectively the "Buyers") to purchase the Property.  After inspection, the

16   Buyers reduced their offer to $470,000, less a $9,200 credit through escrow, which is the highest

17   and best legitimate offer received to date.

18       5.      Based on my experience in the sale of properties in the area where the Property is

19   located, I believe that the $470,000 price, less a $9,200 credit, reflects the current fair market value

20   of the Property.  Additionally, Coldwell Banker will publish sale hearing information in the

21   Multiple Listing Service and I will actively encourage overbidding.

22       6.      I will post the hearing date of the Trustee's Motion:  (1) to Approve Sale of Real

23   Property Commonly Known as Motion:  (1) to Approve Sale of Real Property Commonly Known

24   as 5125 Harold Way #108, Los Angeles, California Free and Clear of Liens and Claims, and (2) to

25   Authorize Payment of Real Estate Brokers' Commissions (the "Motion") through the Multiple

26   Listing Service.

27   ///

28   ///

1470919.1  1718768A                                    16

1        7.     To the best of my knowledge, the Buyers are not associated with the Debtor or the

2 Estate, or with any of the professionals employed by the estate.  My discussions with the Buyers

3 were conducted at arm's length through their broker.

4

5      I declare under penalty of perjury under the laws of the United States of America that the

6 foregoing is true and correct.

7      Executed on March __, 2018, at Los Angeles, California.

8

9                                 *SIGNATURE ON NEXT PAGE*

10                                 JANE SCHORE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Estate, or with any of the professionals employed by the estate.  My discussions with the Buyers

were conducted at arm's length through their broker

    I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.

    Executed on March ℓ, 2018, at Los Angeles, California.


*Jane Schore*

JANE SCHORE

1

**REQUEST FOR JUDICIAL NOTICE**

2    Brad D. Krasnoff, the Chapter 7 trustee herein (the "Trustee"), requests that the Court take

3  judicial notice of the following facts reflected in the Debtor's case:

4    1.    This case was commenced on or about July 19, 2017 (the "Petition Date"), when

5  Sung Hee Ryoo (the "Debtor") filed a voluntary petition for relief under Chapter 7 of title 11 of the

6  United States Code (the "Bankruptcy Code").

7    2.    Brad D. Krasnoff was subsequently appointed as the Chapter 7 Trustee for the

8  Debtor's estate and continues to serve in that capacity for the benefit of creditors.

9    3.    The Debtor scheduled as an asset a condominium unit commonly known as 5125

10  Harold Way #108, Los Angeles, California (the "Property").

11    4.    Pursuant to the Court's order entered on or about February 20, 2018 (*docket no. 24*),

12  the Trustee employed Coldwell Banker as his real estate broker to list and aid in marketing the

13  Property and approved the proposed listing agreement at $385,000 with an aggregate commission

14  of 4%. A true and correct copy of the order is attached hereto, marked as Exhibit "3" and

15  incorporated herein by this reference.

16    5.    The Debtor originally claimed a homestead exemption in the Property of $100,000.

17    6.    A true and correct copy of the Stipulation between Trustee and Debtor Regarding

18  Estate's Interest in Real Property is attached hereto, marked as Exhibit "4" and incorporated herein

19  by this reference.

20    7.    A true and correct copy of the Order on Stipulation between Trustee and Debtor

21  Regarding Estate's Interest in Real Property is attached hereto, marked as Exhibit "5" and

22  incorporated herein by this reference.

23

24  DATED: March ___, 2018                DANNING, GILL, DIAMOND & KOLLITZ, LLP

25

26                                        By: _____

27                                             ERIC P. ISRAEL
                                              Attorneys for Brad D. Krasnoff, Chapter 7 Trustee
28

# EXHIBIT 1

DocuSign Envelope ID: 29F2030DE-4793-41EE-B5D7-FE8692F54023

## COUNTER-OFFER

     This agreement (the "Agreement" or "Counter-Offer") is intended to set forth the terms and conditions of a contract for the purchase by and sale to Rebecca Lee Revenig and Noah Alexander Dorsey (the "Buyer") from Brad D. Krasnoff (the "Seller" or "Trustee"), solely in his capacity as the duly appointed, qualified, and acting chapter 7 trustee for the estate of the debtor Sung Hee Ryoo ("the "Debtor"), of the real property more commonly known as 5125 Harold Way, #108, Los Angeles, California (the "Property").  When executed below, this Agreement will constitute conclusive evidence and the exclusive terms and conditions of the contract for such purchase and sale (the "Sale") of the Property and will supersede and replace in its entirety Buyer's written offer and all attachments and addendum in support thereof dated February 5, 2018 (the "Offer") and any oral or written negotiations since the Offer.

**PURCHASE PRICE; DEPOSIT; ESCROW.**  The purchase price for the Property shall be $485,000 (the "Purchase Price").  Buyer shall make an initial deposit of $14,550 (the "Initial Deposit") in the form of cashier's check or wire transfer made payable to "A&A Escrow Services, Inc." (the "Escrow Holder") which shall be delivered to A&A Escrow Services, Inc., 415 N Crescent Drive, Suite 320, Beverly Hills, California 90210, within two (2) business days of (i) acceptance of this Counter-Offer by Buyer, (ii) Seller's execution of the Affirmation Agreement in the form attached hereto as Exhibit "A", and (iii) Buyer's receipt of a copy of the fully executed Counter-Offer and the Affirmation Agreement.

**FINANCIAL WHEREWITHAL.**  Buyer shall deliver to the Seller, within two (2) business days of (i) acceptance of this Counter-Offer by Buyer, (ii) Seller's execution of the Affirmation Agreement in the form attached hereto as Exhibit "A", and (iii) Buyer's receipt of a copy of the fully executed Counter-Offer and the Affirmation Agreement, proof of committed funds available to Buyer sufficient to enable Buyer to consummate the acquisition contemplated herein, which proof shall be in the form of a letter of credit, loan commitment, or other form acceptable to Seller in Seller's sole discretion.  In the event that either (i) Buyer fails timely to provide any such proof, or (ii) Seller determines, in Seller's sole discretion, that any proof of funds provided to Seller by Buyer is unacceptable, Seller shall have the right, at Seller's option, to provide written notice to Buyer that this Counter-Offer is terminated.  In the event that Seller exercises such termination right, this Counter-Offer shall terminate effective as of the date of Seller's written notice to Buyer, whereupon the Initial Deposit (if theretofore deposited with the Escrow Holder) shall be returned to Buyer and Buyer and Seller shall each be relieved of any further obligations hereunder.

**ESCROW INSTRUCTIONS.**  Escrow instructions corresponding to the terms of this Agreement shall be provided by the Escrow Holder and signed by the parties within five (5) business days of the date of Buyer's and Seller's receipt of said escrow instructions.  Buyer and Seller shall deposit such documents and instruments with the Escrow Holder as and when reasonably required to complete the sale.  Buyer shall be free to assign this Agreement to another person or entity (the "Assignee") subject to Seller's prior review and written

EXHIBIT 1

DocuSign Envelope ID: 4F2098BE-4FF3-4FFE-B6B7-FBB992784023

approval (which approval Seller may grant or withhold in his sole discretion), but Buyer shall remain liable hereunder, together with such Assignee, in the event that such Assignee fails to perform any of Buyer's obligations hereunder.

**BUYER'S DUE DILIGENCE AND CANCELLATION RIGHT.** Buyer shall have twenty-one (21) calendar days from the date of execution hereof to perform, complete, and satisfy all contingencies, financing, inspections, investigations, tests and reviews of reports, and to complete all due diligence which Buyer desires for the Sale of the Property, including, but not limited to and performing and completing any geological, soil, structural, environmental, or other tests, inspections, and investigations desire by Buyer. Buyer may, not later than the end of the twenty-one (21) day due diligence period, provide Seller written notice of Buyer's election to withdraw from this Agreement because of Buyer's inability to complete or dissatisfaction with the results of any of those matters (the "Notice of Cancellation"), in which event Buyer's and Seller's obligations under this Agreement shall be terminated and Buyer shall receive a full refund of Buyer's deposit. If Buyer fails to give such Notice of Cancellation within such due diligence period, all such contingencies shall be automatically removed and Buyer's obligation to proceed shall be non-contingent except as provided herein for (i) Buyer's review of a preliminary title report and underlying documents respecting the title to the Property (as set forth below), and (ii) Bankruptcy Court approval of this Agreement and the Sale (as set forth below).

**TITLE; TITLE INSURANCE.** Within three (3) business days after acceptance of this Agreement, First American Title Company or such other title company of Seller's choice (the "Title Company") will be instructed to provide a preliminary report of the condition of title to the Property, including copies of underlying documents referred to in Schedule B thereof, for Buyer's review. Buyer shall have three (3) business days after receipt of the preliminary title report and underlying documents in which to provide Seller written notice (the "Notice of Title Disapproval") that Buyer disapproves the condition of title with respect to a material matter(s) that interfere with the use or marketability of the Property for the purpose for which it is currently used or intended to be used. Such notice must refer to the specific exception(s) in Schedule B of the preliminary title report and the specific underlying document(s) which are the basis for Buyer's disapproval. Within five (5) business days after receipt of the Notice of title Disapproval, Seller may, in Seller's sole discretion, either (i) cancel this Agreement and the Sale, in which event Buyer's and Seller's obligations under this Agreement shall be terminated and Buyer shall receive a full refund of the Initial Deposit, or (ii) elect to correct the item(s) that were disapproved by Buyer, in which event the Sale shall proceed. Seller may correct such item by any means that will result in the Title Company either removing the disapproved exception(s) from the preliminary report, providing title insurance coverage by endorsement against such exception(s), or providing that the order approving the Sale entered by the Bankruptcy Court shall resolve such exception in a manner acceptable to Buyer. At the close of the Sale, Seller shall convey and Buyer shall accept title to the Property as shown in Schedule B of the preliminary title report, subject to any corrections as in this paragraph above, free and clear of all monetary liens, subject to the terms of the Agreement and the order approving the Sale. Seller shall pay the costs of a CLTA Standard Owner's policy of title insurance.

DocuSign Envelope ID: 9F20980E-47F9-47FE-B607-FB095279A023

**REMOVAL OF CONTINGENCIES; COURT CONFIRMATION; CLOSING; DELIVERY OF POSSESSION.** If Buyer does not give Seller written Notice of Cancellation or Notice of Title Disapproval as and when provided in this Agreement, Buyer's silence shall be deemed acceptance and Buyer shall be deemed to have satisfied and removed all of Buyer's contingencies and to proceed with the Sale. Seller shall then file a motion with the Bankruptcy Court to confirm the Sale, which sale shall be subject to qualified overbids as approved by the Bankruptcy Court. Upon such removal of contingencies, Buyer shall be unconditionally obligated to proceed with the Sale, subject only to Bankruptcy Court confirmation as set forth below. If the Bankruptcy Court confirms the Sale to Buyer, the closing shall take place as soon as practicable after entry of the order approving the Sale, but no later than the first business day after fourteen (14) calendar days following the entry of the operative order approving the Sale. The closing shall occur on the date the deed transferring the Property to Buyer is recorded with the County Recorder where the Property is located. Occupancy shall be delivered to Buyer upon Escrow Holder's confirmation of recording.

**BANKRUPTCY SALE.** Buyer acknowledges that Seller is a trustee duly appointed to administer the Debtor's bankruptcy estate, and is a party to this Agreement solely in that capacity. Seller and his brokers and agents (collectively, the "Seller's Brokers") have not and will not determine the condition or fitness for use of the Property for any particular purpose. The Sale shall be "as is," "where is," "with all faults," and with no warranty by or recourse whatsoever to Seller or Seller's Brokers herein. Transfer of the Property shall be by Quitclaim Deed. All parties acknowledge that Seller is a party to this Agreement solely in his capacity as trustee of the Debtor's estate and that in the event of any default in the performance of any of Seller's obligations under the Offer (as modified hereby) or in the event that any other claim is asserted against the Trustee or the estate in connection with this transaction, the Trustee shall in no event have any personal liability whatsoever (whether in his individual capacity or otherwise), it being expressly understood and agreed that Buyer's sole recourse, if any, in such event shall be to the assets of the Debtor's estate.

**TAXES; PRORATIONS; COSTS OF SALE.** All real property taxes and assessments for the current tax year shown in the current County Tax Bill shall be prorated between Seller and Buyer and charged as of the closing date to the applicable accounts of Seller and Buyer. The Sale shall be free and clear of any homeowner's association assessments and all real property taxes (other than those prorated as provided above) enforceable against the Property through the closing date of the Sale. Escrow fees shall be split between Buyer and Seller in the manner customary in the County where the Property is located. Seller shall pay any real property transfer tax. Seller shall pay the cost of a Natural Hazard Disclosure Report, from a vendor selected by Seller, to be furnished to Buyer through escrow. Buyer shall pay and have sole responsibility for compliance with any requirements imposed on the Property or this Sale by any governmental agency(ies), including compliance with any applicable governmental retrofit requirements. Buyer shall pay the cost of recording the deed. Buyer and Seller shall each pay their own expenses of every other type except as specifically provided in this Agreement.

**BANKRUPTCY COURT APPROVAL; OVERBIDDING.** The Sale is subject to notice to creditors, approval by the Bankruptcy Court, and higher and better qualified bids received by Seller through and including the Bankruptcy Court hearing to confirm the Sale. Payment of any and all real estate brokers' commissions is also subject to notice to creditors and approval by the Bankruptcy Court. Buyer acknowledges and agrees that Seller may not seek to obtain the Bankruptcy Court's approval if Seller has determined that it would be in the best interest of the bankruptcy estate not to do so.

**BROKERS.** Seller is represented by Coldwell Banker. Buyer is represented by ReMax Olsen & Associates (the "Buyer's Brokers"). Subject to Bankruptcy Court approval, Seller will pay a real estate broker's commission aggregating 4% of net sales price of the Property to the Brokers as follows: 2% to Coldwell Banker and 2% to ReMax Olsen & Associates in connection with the closing of the Sale. Seller's Brokers and Buyer's Brokers are collectively referred to herein as the "Brokers". No commission or compensation shall be due or payable to Brokers in connection with this Agreement or Sale except from the cash proceeds of an actual Sale of the Property that closes to Buyer. Buyer hereby represents and warrants that, other than the Brokers, Buyer has not dealt with any broker, finder, or other person entitled to any fee, commission, or other compensation in connection with the Sale and Buyer shall indemnify, defend, protect, and hold Seller and the related bankruptcy estate harmless of, from, and against any claims, demands, actions, causes of action, losses, liabilities, costs, and expenses (including, without limitation, all court costs and reasonable attorneys' fees) as Seller may suffer or incur in the event that any claims for any such fees, commissions, or other compensation of any kind are hereafter asserted.

**MATERIAL CHANGE OF CONDITION.** In the event of any material change in the condition of the Property after the date of acceptance of this Counter-Offer, if Buyer demands repair of any resulting actual damage to the Property, Seller may, at Seller's sole option: (I) elect to terminate this Agreement, in which event Buyer's and Seller's obligations to buy or sell shall terminate and the Initial Deposit shall be refunded to Buyer; or (ii) make required repairs at the bankruptcy estate's expense; or (iii) assign any insurance proceeds for the damage to the Property to Buyer as of the close of the Sale; or (iv) credit the cost of such repairs to Buyer through escrow, it being agreed that in the event that Seller elects and complies with subpart (b), (c), or (d) of this paragraph, Buyer's obligation to proceed with the Sale shall be unaffected by any such material change in the condition of the Property.

**REMEDY FOR BUYER'S OR SELLER'S FAILURE TO CLOSE.** Buyer's sole remedy in the event that the Sale fails to close as a result of Seller's inability or failure to close for any reason, including but not limited to the reason of failure to obtain approval of the Sale by the Bankruptcy Court, shall be the mutual release of Buyer's and Seller's obligations to buy or sell and a full refund of the Initial Deposit (plus any increase thereof by Buyer). In the event Buyer fails to close the Sale for any reason other than Seller's default, after Buyer's contingencies have been removed as under this Agreement, Buyer's Initial Deposit (plus any increase thereof by Buyer) shall be paid over to Seller and retained by Seller as liquidated damages without further legal action. If the Property is a dwelling with no more than four units, one of which Buyer intends to occupy, then the amount retained shall be no more than three percent (3%) of the Purchase Price. This provision shall apply equally to the Initial Deposit.

[Buyer's Initials]

DocuSign Envelope ID: 9F2058DE-4779-47FE-86D7-FEE292753023

**BANKRUPTCY COURT JURISDICTION.** The United States Bankruptcy Court for the Central District of California, Los Angeles Division shall have sole and exclusive jurisdiction to interpret and enforce the terms of this Agreement as a core matter and Buyer hereby consents and submits to such exclusive jurisdiction, including entering a final judgment. This Agreement shall be interpreted and enforced pursuant to the laws of the State of California, the United States of America, and title 11 of the United States Code.

**"AS-IS," "WHERE-IS" CONDITION; NO WARRANTIES.** Buyer acknowledges and agrees that, to the maximum extent permitted by law, the sale contemplated by this Agreement is made "as-is," "where-is," and "with all faults," except as specifically provided in this Agreement. Seller and Seller's Brokers have not made, do not make, and specifically negate and disclaim any representations, warranties, promises, covenants, agreements, or guaranties of any kind or character whatsoever, whether express or implied, oral or written, concerning or respecting (i) the value of the Property; (ii) the income to be derived from the Property; (iii) the suitability of the Property, or lack thereof for any activity or use which Buyer may intend to conduct thereon, including any possibilities or limitations for future development; (iv) the habitability, merchantability, marketability, profitability, or fitness for a particular purpose, of the Property, or lack thereof; (v) the manner, quality, state of repair, or lack of repair of the Property; (vi) the nature, quality, or condition of the Property, or any portion, system, or component thereof, including without limitation, water, soil, and geology; (vii) the compliance of the Property or its operation, or lack thereof, with any laws, ordinances, regulations, rules, or orders of any applicable governmental authority or body; (viii) the manner or quality of engineering, design, construction or materials, if any, incorporated into the Property; (ix) the compliance or lack of compliance with any land use, building and safety, or other laws, ordinances, regulations, rules, orders, or other requirements imposed or enforced by any governmental or non-governmental body, including without limitation the Americans with Disabilities Act of 1990; (x) the presence or absence at, on, under, or adjacent to the Property, of materials described as "hazardous substances, hazardous materials, or toxic substances" or by similar terms under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (42 U.S.C. §§ 9601, et seq.), the Hazardous Materials Transportation Act, as amended (49 U.S.C. §§1801, et seq.), the Resource Conservation and Recovery Act (42 U.S.C. §§ 6901, et seq.), the Toxic Substance Control Act (15 U.S.C. § 2601, et seq.), the Clean Water Act (33 U.S.C. § 1251, et seq.), California Health and Safety Code §§ 25117 or 25316, or other statutes and laws, all as amended and including all regulations issued thereunder; (xi) the content, completeness or accuracy of any due diligence materials or preliminary report regarding title to the Property; (xii) the conformity or lack of conformity of the improvements to any plans or specifications for the Property, including any plans and specifications that may have been or may be provided to Buyer; (xiii) the conformity or lack of conformity of the Property to past, current, or future applicable zoning or building requirements; (xiv) any deficiency of any undershoring, drainage, or other aspects, systems, or components of or affecting the Property; (xv) the fact, if applicable, that all or a portion of the Property may be located on or near any natural hazard zone as determined by any governmental agency or body; (xvi) the existence of vested land use, zoning, or building entitlements affecting the Property or any other property; or (xvii) any

DocuSign Envelope ID: 29F2098DE-4792-4PEB-B5D7-FEB6821A84023

other matter.  Without in any manner limiting the foregoing, Buyer hereby acknowledges and agrees that (i) Seller's Brokers have provided (and will hereafter provide) to Buyer various materials and information relating to the Property, including, without limitation, information and materials relating to the condition of the Property, and (ii) all such materials and information so provided to Buyer by Seller's Brokers shall, for all purposes of this Agreement, be deemed to have been disclosed to Buyer by the Seller, as well.

**BROKERS.**  Seller's Brokers herein have not and will not perform any inspections, investigations, or due diligence on behalf of Buyer unless otherwise specified herein. Buyer is informed that Buyer must arrange for any inspections and investigations desired by Buyer utilizing suitable third party professionals selected and compensated by Buyer.  In no event shall Seller have any liability or responsibility for any representation, warranty, statement made, or information furnished by Seller's Brokers, or any other person or entity, concerning the Property, this Agreement, or any other matter, unless expressly set forth in writing and signed personally by Seller.

**OPPORTUNITY TO INSPECT; BUYER'S SOLE RELIANCE.**  Buyer represents, warrants, acknowledges, and agrees that Buyer has been given the opportunity to inspect and investigate the Property and all other facts and circumstances deemed by Buyer relevant and significant, and to review information and documentation affecting the Property.  In deciding to proceed with the Sale, Buyer is relying solely on Buyer's own inspections and investigation of the Property (including by any outside professionals whom Buyer has elected to engage for such services) and review of such information and documentation, and not on any information provided or to be provided by Seller.  Buyer further acknowledges and agrees that any information made available to Buyer or provided or to be provided by or on behalf of Seller with respect to the Property was obtained from a variety of sources and that neither Seller nor Seller's Brokers nor any other person has made or makes any representations as to the accuracy or completeness of such information.  Buyer hereby fully and irrevocably releases all such sources and preparers of information and documentation affecting the Property which were retained or engaged by Seller or Seller's Brokers from any and all claims that Buyer may now or hereafter have against such sources and preparers of information, for any costs, expenses, losses, liabilities, damages, demands, actions, or causes of action arising from any such information or documentation.  NEITHER SELLER NOR BROKERS HAVE PROVIDED OR WILL PROVIDE ANY LEGAL OR TAX ADVICE TO BUYER.  Buyer is informed that Buyer must obtain any such advice, if desired by Buyer, from independent professionals selected and engaged by Buyer.

**PHYSICAL, GEOLOGICAL, PEST CONTROL, AND ENVIRONMENTAL INSPECTIONS AND INVESTIGATIONS.**

A.     BUYER SHALL CONDUCT THOROUGH PHYSICAL, GEOLOGICAL, PEST CONTROL, ENVIRONMENTAL INSPECTIONS AND INVESTIGATIONS OF THE PROPERTY AS MAY BE DETERMINED BY BUYER, THROUGH QUALIFIED PROFESSIONALS SELECTED BY BUYER.  Seller and Seller's Brokers strongly recommend that Buyer fully exercise and not waive such inspections and investigations.

B.    Buyer shall select and employ, at Buyer's sole expense, a licensed engineer(s), architect(s), contractor(s), geologist(s), pest control licensee(s), environmental consultant(s), or other qualified professional(s), to make inspection(s) and investigations of the Property, including, but not limited to, (i) its general structure, plumbing, heating, air conditioning (if any), electrical system, built-in appliances, cesspool/sewer/septic system, well, roof, soils, foundation, mechanical systems, pool, spa, related equipment and filters, sprinklers, and those other matters affecting the desirability of the Property (all if and only to the extent any such structures, systems, and components are presently a part of the Property); (ii) any actual or potential wood destroying pests or other conditions damaging to the Property or any portion thereof; (iii) environmental hazards, substances, products, or conditions, including without limitation, asbestos, mold, formaldehyde, lead, lead-based paint, contaminated soil or water, fuel, chemical storage tanks, hazardous waste, electromagnetic fields, and radon gas, any of which may constitute a health risk; (iv) the presence or absence of any required governmental permits, inspections, applications, approvals, and certificates of occupancy, and compliance or lack of compliance with building codes and laws applicable to the Property; (v) plans and specifications for the Property; (vi) all applicable zoning, municipal, county, state, and federal, including those affecting the past, current, or any future use of the Property; (vii) deed restrictions and other matters of public record which may govern, restrict, condition, or prohibit the use, alteration, or development of the Property; and (viii) generally, without limitation, any and all other items and matters of whatsoever nature, character, or description, which Buyer deems material to Buyer's interests, in, on, or affecting the Property, and to approve or disapprove said inspection within the period and in the manner set forth in this Agreement.

**COMPLETE AGREEMENT; NO OTHER REPRESENTATIONS OR WARRANTIES.**
Seller shall not be liable or bound in any manner by any oral or written statements, representations, or information pertaining to the Property, or the operation thereof, furnished by any real estate broker, agent, employee, contractor, or other person. Buyer further acknowledges and agrees Seller has no obligations to make repairs, replacements, or improvements to the Property except as may otherwise be expressly stated herein.  Without limiting any other provision hereof,  Buyer represents, warrants, and covenants to Seller that, except for Seller's express representations and warranties specified in this Agreement, Buyer is relying solely upon Buyer's own investigation of the Property.

**WRITTEN AFFIRMATION OF SELLER REQUIRED.** Buyer understands that Seller may continue to receive and respond to other offers on the Property and may be making several counter-offers concurrently containing the same or different terms.  This Counter-Offer shall not be binding until accepted by Buyer and executed by Buyer and Seller on the signature page below; and then approved by Seller, in Seller's sole discretion, in the form of the Seller's "Affirmation of Agreement" attached hereto as Exhibit "A" which, if so executed by Seller, will constitute Seller's agreement that Seller will sell the Property to Buyer, subject to Bankruptcy Court approval, the rights of any overbidding parties, and the terms and conditions of this Agreement.  Buyer further acknowledges that it would be imprudent and unrealistic to rely

DocuSign Envelope ID: 9F20980E-4779-47FE-B6D7-FB8592754023

upon the expectation of entering into a binding agreement regarding the subject matter of this Counter-Offer prior to receipt of Seller's Affirmation of Agreement, and further represents to Seller that any efforts to complete due diligence, to negotiate or obtain financing, or to perform any of the obligations provided herein shall not be considered as evidence of binding intent without Seller's Affirmation of Agreement, and understands that BUYER'S ACCEPTANCE HEREOF SHALL HAVE NO FORCE OR EFFECT PRIOR TO BUYER'S RECEIPT OF SUCH AFFIRMATION OF AGREEMENT SIGNED BY SELLER.

**DELIVERY OF POSSESSION.** Unless otherwise agreed to in writing by Buyer and Seller, the Property shall be delivered to Buyer vacant at the close of escrow.

DocuSign Envelope ID: 9F20980E-4779-47FE-B6D7-F8D692754023

**EXPIRATION OF COUNTER-OFFER.** This Counter-Offer shall expire if not accepted by Buyer by delivering a copy hereof, fully signed and initialed by Buyer, to Seller, on or before close of business February 9, 2018. Such acceptance shall nevertheless be subject to the receipt of Seller's Affirmation of Agreement.

**AGREED AND ACCEPTED:**

BUYER:

Dated: _2/8/2018_____

By:

Rebecca Lee Revenig and Noah Alexander Dorsey


SELLER (subject to execution of Seller's Affirmation of Agreement):

Dated: _2/7/18_____

By: _____
Brad D. Krasnoff, solely in his capacity as Chapter 7 Trustee for Sung Hee Ryoo

DocuSign Envelope ID: 9F20980E-4779-47FE-B6D7-F8B592754023

## EXHIBIT "A"

### SELLER'S AFFIRMATION OF AGREEMENT

Seller hereby acknowledges Buyer's acceptance of the foregoing Counter-Offer and affirmatively agrees to sell the Property to Buyer on the terms and conditions of the foregoing Agreement, but subject to Bankruptcy Court approval and any qualified overbidders.  Seller shall revoke any other outstanding Counter-Offers made to other prospective buyers or make the same subject and subordinate to this Agreement.

SELLER

Dated: _2/9/18_____

By: _____

Brad D. Krasnoff, solely in his capacity as Chapter 7 Trustee for Sung Hee Ryoo

DocuSign Envelope ID: 6BB767F8-29C5-4A17-9023-3F3818EA170B

# A&A
## ESCROW SERVICES, INC.

415 N. Crescent Drive, Suite 320
Beverly Hills, CA 90210

Phone:  (310) 550-6055
Fax:  (310) 550-6130

Antonia Delgado
Sr. Escrow Officer

Date:  February 28, 2018
Escrow No.:  104184-AA

AMENDED ESCROW INSTRUCTIONS

Property Address:    5125 Harold Way, #108,  Los Angeles, CA  90027

THE ABOVE NUMBERED ESCROW IS HEREBY AMENDED AND/OR SUPPLEMENTED AS FOLLOWS:

The parties are aware and acknowledge that the purchase price has been reduced from $485,000.00 to $470,000.00, for subject property.

At close of escrow, Escrow Holder is hereby authorized and instructed to debit the account of the Seller and credit the account of the Buyer the sum of $9,200.00 towards Buyer's non-recurring closing costs.

Buyer hereby approves and removes the physical inspection contingency.

ALL OTHER TERMS AND CONDITIONS TO REMAIN THE SAME.

SELLERS:

Bankruptcy Estate of Sung Hee Ryoo

By:
    Brad D. Krasnoff, solely in his capacity as
    Chapter 7 Trustee

BUYERS:

DocuSigned by:
Noah Alexander Dorsey

DocuSigned by:
Rebecca Lee Revenig

29

DocuSign Envelope ID: 6BB767F8-29C5-4A17-9023-3F5818EA370B



CALIFORNIA
ASSOCIATION
OF REALTORS®

**ADDENDUM**

(C.A.R. Form ADM, Revised 12/15)

**No. _1_**

The following terms and conditions are hereby incorporated in and made a part of the: ☒ Purchase Agreement, ☐ Residential Lease or Month-to-Month Rental Agreement, ☐ Transfer Disclosure Statement (Note: An amendment to the TDS may give the Buyer a right to rescind), ☐ Other _____,
dated _____ **February 8, 2018** _____ , on property known as _____ **5125 Harold Way #108** _____
_____ **Los Angeles, CA  90027** _____
in which _____ **Rebecca Lee Revenig, Noah Alexander Dorsey** _____ is referred to as ("Buyer/Tenant")
and _____ is referred to as ("Seller/Landlord").

_**Purchase Price to be reduced to 470,000.**_

The foregoing terms and conditions are hereby agreed to, and the undersigned acknowledge receipt of a copy of this document.

Date _**February 28, 2018**_ _____    Date _____

Buyer/Tenant     Seller/Landlord _____
_Rebecca Lee Revenig_

Buyer/Tenant _____    Seller/Landlord _____
_Noah Alexander Dorsey_

© 1986-2015, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

| Reviewed by _____ Date _____ |

EQUAL HOUSING OPPORTUNITY

**ADM REVISED 12/15 (PAGE 1 OF 1)**

**ADDENDUM (ADM PAGE 1 OF 1)**

RE/MAX Olson & Associates,Inc., 11141 Tampa Ave. Porter Ranch CA 91326                    Phone: (818)667-2151      Fax:                    Rebecca Lee
Collin Johnson                          Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

DocuSign Envelope ID: A81CF770-61FD-4352-BC2D-45CE8B073863

**CALIFORNIA**
**ASSOCIATION**
**OF REALTORS®**

**CONTINGENCY REMOVAL No. ___2___**
(C.A.R. Form CR, Revised, 6/16)

In accordance with the terms and conditions of the: ☐ Residential Purchase Agreement (C.A.R. Form RPA-CA), ☐ Request For Repair (C.A.R. Form RR), ☐ Response And Reply To Request For Repair (C.A.R. Form RRRR) or ☐ Other _____ ("Agreement"), dated _02/08/2018_ , on property known as _____5125 Harold Way #108, Los Angeles, CA 90027_____ ("Property"), between _____Rebecca Lee Revenig, Noah Alexander Dorsey_____ ("Buyer") and _____ ("Seller").

## I. BUYER REMOVAL OF BUYER CONTINGENCIES:

1. With respect to any contingency and cancellation right that Buyer removes, unless otherwise specified in a separate written agreement between Buyer and Seller, Buyer shall conclusively be deemed to have: **(i)** completed all Buyer Investigations and review of reports and other applicable information and disclosures; **(ii)** elected to proceed with the transaction; and **(iii)** assumed all liability, responsibility and expense, **if any**, for Repairs, corrections, or for the inability to obtain financing. Waiver of statutory disclosures is prohibited by law.

2. Buyer removes those contingencies specified below.
   **A. ONLY the following individually checked Buyer contingencies are removed:**
   1. ☐ Loan (Paragraph 3J)
   2. ☐ Appraisal (Paragraph 3I)
   3. ☐ Buyer's Physical Inspection (Paragraph 12)
   4. ☐ All Buyer Investigations other than a physical inspection (Paragraph 12)
   5. ☐ Condominium/Planned Development (HOA or OA) Disclosures (Paragraph 10F)
   6. ☐ Reports/Disclosures (Paragraphs 7 and 10)
   7. ☐ Title: Preliminary Report (Paragraph 13)
   8. ☐ Sale of Buyer's Property (Paragraph 4B)
   9. ☐ Review of documentation for leased or liened items (Paragraph 8B(5)
   10. ☐ Other: _____
   11. ☐ Other: _____
   **OR B.** ☒ **ALL Buyer contingencies are removed, EXCEPT:** ☐ Loan Contingency (Paragraph 3J); ☐ Appraisal Contingency (Paragraph 3I); ☐ Contingency for the Sale of Buyer's Property (Paragraph 4B); ☐ Condominium/Planned Development (HOA) Disclosures (Paragraph 10F); ☐ Other _____
   **OR C.** ☐ **BUYER HEREBY REMOVES ANY AND ALL BUYER CONTINGENCIES.**

3. Once all contingencies are removed, whether or not Buyer has satisfied him/herself regarding all contingencies or received any information relating to those contingencies, Buyer may not be entitled to a return of Buyer's deposit **if Buyer does not close escrow. This could happen even if, for example, Buyer does not approve of some aspect of the Property or lender does not approve Buyer's loan.**

**NOTE:** Paragraph numbers refer to the California Residential Purchase Agreement (C.A.R. Form RPA-CA). Applicable paragraph numbers for each contingency or contractual action in other C.A.R. contracts are found in Contract Paragraph Matrix (C.A.R. Form CPM).

Buyer _Rebecca Lee Revenig_ Date _3/2/2018_

Buyer _Noah Alexander Dorsey_ Date _3/2/2018_

## II. SELLER REMOVAL OF SELLER CONTINGENCIES: Seller hereby removes the following Seller contingencies:
☐ Finding of replacement property (C.A.R. Form SPRP) ☐ Closing on replacement property (C.A.R. Form SPRP) ☐ Other

Seller _____ Date _____

Seller _____ Date _____

( _____ / _____ ) (Initials) **CONFIRMATION OF RECEIPT:** A copy of this signed Contingency Removal was personally received by ☐ Buyer ☐ Seller or authorized agent on _____ (date), at _____ ☐ AM / ☐ PM.

© 2003-2016, California Association of REALTORS®, Inc.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____

**CR REVISED 6/16 (PAGE 1 OF 1)**

**CONTINGENCY REMOVAL (CR PAGE 1 OF 1)**

RE/MAX Olson & Associates,Inc., 11141 Tampa Ave. Porter Ranch CA 91326    Phone: (818)667-2151    Fax:    Rebecca Lee
Collin Johnson    Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com

# EXHIBIT 2

**CLTA Preliminary Report Form**
(Rev. 11/06)

Order Number: O-SA-5639307
Page Number: 1

 *First American Title*

# First American Title Company

**4 First American Way**
**Santa Ana, CA 92707**
California Department of Insurance License No. 151

Antonia Delgado
A & A Escrow Services, Inc
415 North Crescent Drive, Suite 320
Beverly Hills, CA 90210
Phone: (310)550-6055
Fax:

Customer Reference:          104184-AA
Order Number:                O-SA-5639307 (dt)

Title Officer:               Debbie Tognetti
Phone:                       (714)250-8579
Fax No.:                     (714)481-2956
E-Mail:                      FAHQ-RA-octitle3@firstam.com

Buyer:                       Revenig
Property:                    5125 Harold Way #108
                             Los Angeles, CA 90027

### PRELIMINARY REPORT

In response to the above referenced application for a policy of title insurance, this company hereby reports that it is prepared to issue, or cause to be issued, as of the date hereof, a Policy or Policies of Title Insurance describing the land and the estate or interest therein hereinafter set forth, insuring against loss which may be sustained by reason of any defect, lien or encumbrance not shown or referred to as an Exception below or not excluded from coverage pursuant to the printed Schedules, Conditions and Stipulations of said Policy forms.

The printed Exceptions and Exclusions from the coverage and Limitations on Covered Risks of said policy or policies are set forth in Exhibit A attached. *The policy to be issued may contain an arbitration clause. When the Amount of Insurance is less than that set forth in the arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties.* Limitations on Covered Risks applicable to the CLTA and ALTA Homeowner's Policies of Title Insurance which establish a Deductible Amount and a Maximum Dollar Limit of Liability for certain coverages are also set forth in Exhibit A. Copies of the policy forms should be read. They are available from the office which issued this report.

**Please read the exceptions shown or referred to below and the exceptions and exclusions set forth in Exhibit A of this report carefully. The exceptions and exclusions are meant to provide you with notice of matters which are not covered under the terms of the title insurance policy and should be carefully considered.**

**It is important to note that this preliminary report is not a written representation as to the condition of title and may not list all liens, defects, and encumbrances affecting title to the land.**

This report (and any supplements or amendments hereto) is issued solely for the purpose of facilitating the issuance of a policy of title insurance and no liability is assumed hereby. If it is desired that liability be assumed prior to the issuance of a policy of title insurance, a Binder or Commitment should be requested.

32

Order Number: **O-SA-5639307**
Page Number: 2

Dated as of February 05, 2018 at 7:30 A.M.

The form of Policy of title insurance contemplated by this report is:

ALTA/CLTA Homeowner's (EAGLE) Policy of Title Insurance (2013) and ALTA Ext Loan Policy 1056.06 (06-17-06) if the land described is an improved residential lot or condominium unit on which there is located a one-to-four family residence; or ALTA Standard Owner's Policy 2006 (WRE 06-17-06) and the ALTA Loan Policy 2006 (06-17-06) if the land described is an unimproved residential lot or condominium unit

A specific request should be made if another form or additional coverage is desired.

Title to said estate or interest at the date hereof is vested in:

Sunghee Ryoo, a single woman, subject to proceedings pending in the Bankruptcy Court of the CENTRAL District of the U. S. District Court, California entitled in re: RYOO, SUNG HEE, debtor, Case No. 17-18768, wherein a petition for relief was filed on July 19, 2017.

The estate or interest in the land hereinafter described or referred to covered by this Report is:

FEE AS TO PARCEL(S) 1; EASEMENT AS TO PARCEL(S) 2

The Land referred to herein is described as follows:

(See attached Legal Description)

At the date hereof exceptions to coverage in addition to the printed Exceptions and Exclusions in said policy form would be as follows:

1.   General and special taxes and assessments for the fiscal year 2018-2019, a lien not yet due or payable.

2.   General and special taxes and assessments for the fiscal year 2017-2018.
     First Installment:            $2,164.90, PAID
     Penalty:                      $0.00
     Second Installment:           $2,164.89, OPEN
     Penalty:                      $0.00
     Tax Rate Area:                44-08827
     A. P. No.:                    5544-013-044

3.   The lien of supplemental taxes, if any, assessed pursuant to Chapter 3.5 commencing with Section 75 of the California Revenue and Taxation Code.

Order Number: **O-SA-5639307**
Page Number: 3

4.   Any easements or servitudes appearing in the public records.
     Affects:                    Common Area.

5.   Covenants, conditions, restrictions and easements in the document recorded  in Book 3252 of Deeds, Page 66, but deleting any covenant, condition or restriction indicating a preference, limitation or discrimination based on race, color, religion, sex, sexual orientation, marital status, ancestry, disability, handicap, familial status, national origin or source of income (as defined in California Government Code §12955(p)), to the extent such covenants, conditions or restrictions violate 42 U.S.C. §3604(c) or California Government Code §12955.  Lawful restrictions under state and federal law on the age of occupants in senior housing or housing for older persons shall not be construed as restrictions based on familial status.

6.   Covenants, conditions, restrictions and easements in the document recorded  in Book 4209 of Deeds, Page 105, but deleting any covenant, condition or restriction indicating a preference, limitation or discrimination based on race, color, religion, sex, sexual orientation, marital status, ancestry, disability, handicap, familial status, national origin or source of income (as defined in California Government Code §12955(p)), to the extent such covenants, conditions or restrictions violate 42 U.S.C. §3604(c) or California Government Code §12955.  Lawful restrictions under state and federal law on the age of occupants in senior housing or housing for older persons shall not be construed as restrictions based on familial status.

7.   An agreement or covenant to hold land as one parcel recorded February 14, 1980 as INSTRUMENT NO. 80-159227 of Official Records.

8.   The terms and provisions contained in the document entitled "COVENANT AND AGREEMENT" recorded April 30, 1982 as INSTRUMENT NO. 82-449468 of Official Records.

9.   The terms and provisions contained in the document entitled "COVENANT AND AGREEMENT" recorded April 30, 1982 as INSTRUMENT NO. 82-449469 of Official Records.

10.  The condition that the property shall be used for the sole purpose of providing, construction and maintaining Affordable Housing, as more fully defined therein, and upon the terms, covenants and conditions in that certain document recorded January 04, 1983 as INSTRUMENT NO. 83-7664 of Official Records.

     **Note: A written consent or waiver may be necessary from the public agency for any sale or refinance.**

11.  Covenants, conditions, restrictions, easements, assessments, liens, charges, terms and provisions in the document recorded February 14, 1983 as INSTRUMENT NO. 83-173778 of Official Records, which provide that a violation thereof shall not defeat or render invalid the lien of any first mortgage or deed of trust made in good faith and for value, but deleting any covenant, condition, or restriction indicating a preference, limitation or discrimination based on race, color, religion, sex, sexual orientation, familial status, disability, handicap, national origin, genetic information, gender, gender identity, gender expression, source of income (as defined in California Government Code § 12955(p)) or ancestry, to the extent such covenants, conditions or restrictions violation 42 U.S.C. § 3604(c) or California Government Code § 12955.  Lawful restrictions under state and federal law on the age of occupants in senior housing or housing for older persons shall not be construed as restrictions based on familial status.

Order Number: **O-SA-5639307**
Page Number: 4

12.  A deed of trust to secure an original indebtedness of $287,910.00 recorded August 03, 2010 as
    INSTRUMENT NO. 10-1073579 OF OFFICIAL RECORDS.
    Dated:                          July 14, 2010
    Trustor:                        SUNGHEE RYOO, A SINGLE WOMAN
    Trustee:                        LAWYERS TITLE
    Beneficiary:                    MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
    LENDER:                         NATIONSTAR MORTGAGE, LLC

    A document recorded February 11, 2015 as INSTRUMENT NO. 15-151080 OF OFFICIAL RECORDS
    provides that NBS DEFAULT SERVICES, LLC was substituted as trustee under the deed of trust.

    A notice of default recorded February 13, 2015 as INSTRUMENT NO. 15-162388 OF OFFICIAL
    RECORDS.

    According to the public records, the beneficial interest under the deed of trust has been assigned
    to NATIONSTAR MORTGAGE LLC, A DELAWARE LIMITED LIABILITY COMPANY, ITS SUCCESSORS
    AND ASSIGNS by various assignments, the last of which was recorded January 09, 2017 as
    INSTRUMENT NO. 17-31253 of Official Records.

    A notice of trustee's sale recorded June 20, 2017 as INSTRUMENT NO. 17-677672 OF OFFICIAL
    RECORDS.

13.  Proceedings pending in the Bankruptcy Court of the CENTRAL District of the U.S. District Court,
    California, entitled in re: RYOO, SUNG HEE, debtor, Case No. 17-18768, wherein a petition for relief
    was filed under Chapter 7  on  July 19, 2017.

    The effect of a document entitled "VOLUNTARY PETITION", recorded October 24, 2017 as
    INSTRUMENT NO. 17-1217100 of Official Records.

Order Number: **O-SA-5639307**
Page Number: 5

---

## INFORMATIONAL NOTES

Note: The policy to be issued may contain an arbitration clause. When the Amount of Insurance is less than the certain dollar amount set forth in any applicable arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties. If you desire to review the terms of the policy, including any arbitration clause that may be included, contact the office that issued this Commitment or Report to obtain a sample of the policy jacket for the policy that is to be issued in connection with your transaction.

1.    This report is preparatory to the issuance of an ALTA Loan Policy. We have no knowledge of any fact which would preclude the issuance of the policy with CLTA endorsement forms 100 and 116 and if applicable, 115 and 116.2 attached.

When issued, the CLTA endorsement form 116 or 116.2, if applicable will reference a(n) Condominium  known as 5125 HAROLD WAY #108, LOS ANGELES, CA.

2.    According to the public records, there has been no conveyance of the land within a period of twenty-four months prior to the date of this report, except as follows:

None

NOTE to proposed insured lender only: No Private transfer fee covenant, as defined in Federal Housing Finance Agency Final Rule 12 CFR Part 1228, that was created and first appears in the Public Records on or after February 8, 2011, encumbers the Title except as follows: None

The map attached, if any, may or may not be a survey of the land depicted hereon. First American expressly disclaims any liability for loss or damage which may result from reliance on this map except to the extent coverage for such loss or damage is expressly provided by the terms and provisions of the title insurance policy, if any, to which this map is attached.

Order Number: **O-SA-5639307**
Page Number: 6

## LEGAL DESCRIPTION

Real property in the City of Los Angeles, County of Los Angeles, State of California, described as follows:

A CONDOMINIUM COMPRISED OF:

PARCEL 1:

A) AN UNDIVIDED 1/24TH INTEREST IN AND TO LOT 1 OF TRACT NO. 33501, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 1013, PAGES 12 AND 13 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM, UNITS 1 TO 24 INCLUSIVE AS DEFINED AND DELINEATED ON A CONDOMINIUM PLAN RECORDED FEBRUARY 14, 1983 AS INSTRUMENT NO. 83-173777 OF OFFICIAL RECORDS.

B) UNIT 1, AS DEFINED AND DELINEATED ON THE ABOVE REFERRED TO CONDOMINIUM PLAN.

PARCEL 2:

AN EXCLUSIVE EASEMENT, APPURTENANT TO PARCEL 1 ABOVE, FOR ALL USES AND PURPOSES OF A "PARKING SPACE" OVER AND ACROSS THAT PORTION OF LOT 1 OF SAID TRACT NO. 33501 DEFINED AND DELINEATED AS THE "EXCLUSIVE EASEMENT" WHICH BEARS THE SAME NUMBER AS THE UNIT REFERRED TO IN PARCEL 1 ABOVE FOLLOWED BY THE LETTERS PS-1 AND PS-2.

APN: 5544-013-044

Order Number: **O-SA-5639307**
Page Number: **7**



Order Number: **O-SA-5639307**
Page Number: 8

### *NOTICE*

Section 12413.1 of the California Insurance Code, effective January 1, 1990, requires that any title insurance company, underwritten title company, or controlled escrow company handling funds in an escrow or sub-escrow capacity, wait a specified number of days after depositing funds, before recording any documents in connection with the transaction or disbursing funds. This statute allows for funds deposited by wire transfer to be disbursed the same day as deposit. In the case of cashier's checks or certified checks, funds may be disbursed the next day after deposit. In order to avoid unnecessary delays of three to seven days, or more, please use wire transfer, cashier's checks, or certified checks whenever possible.

Order Number: O-SA-5639307
Page Number: 9

**EXHIBIT A**
**LIST OF PRINTED EXCEPTIONS AND EXCLUSIONS (BY POLICY TYPE)**

### CLTA STANDARD COVERAGE POLICY – 1990
EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1.  (a)  Any law, ordinance or governmental regulation (including but not limited to building or zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien, or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.
    (b)  Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.
2.  Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.
3.  Defects, liens, encumbrances, adverse claims or other matters:
    (a)  whether or not recorded in the public records at Date of Policy, but created, suffered, assumed or agreed to by the insured claimant;
    (b)  not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;
    (c)  resulting in no loss or damage to the insured claimant;
    (d)  attaching or created subsequent to Date of Policy; or
    (e)  resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage or for the estate or interest insured by this policy.
4.  Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with the applicable doing business laws of the state in which the land is situated.
5.  Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.
6.  Any claim, which arises out of the transaction vesting in the insured the estate of interest insured by this policy or the transaction creating the interest of the insured lender, by reason of the operation of federal bankruptcy, state insolvency or similar creditors' rights laws.

EXCEPTIONS FROM COVERAGE - SCHEDULE B, PART I

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1.  Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.
    Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the public, records.
2.  Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of the land or which may be asserted by persons in possession thereof.
3.  Easements, liens or encumbrances, or claims thereof, not shown by the public records.
4.  Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.
5.  (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the public records.
6.  Any lien or right to a lien for services, labor or material not shown by the public records.

### CLTA/ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE (12-02-13)
EXCLUSIONS

In addition to the Exceptions in Schedule B, You are not insured against loss, costs, attorneys' fees, and expenses resulting from:

1.  Governmental police power, and the existence or violation of those portions of any law or government regulation concerning:
    a.  building;
    b.  zoning;
    c.  land use;

Order Number: O-SA-5639307
Page Number: 10

   d.  improvements on the Land;
   e.  land division; and
   f.  environmental protection.
   This Exclusion does not limit the coverage described in Covered Risk 8.a., 14, 15, 16, 18, 19, 20, 23 or 27.
2.   The failure of Your existing structures, or any part of them, to be constructed in accordance with applicable building codes. This Exclusion does not limit the coverage described in Covered Risk 14 or 15.
3.   The right to take the Land by condemning it. This Exclusion does not limit the coverage described in Covered Risk 17.
4.   Risks:
   a.  that are created, allowed, or agreed to by You, whether or not they are recorded in the Public Records;
   b.  that are Known to You at the Policy Date, but not to Us, unless they are recorded in the Public Records at the Policy Date;
   c.  that result in no loss to You; or
   d.  that first occur after the Policy Date - this does not limit the coverage described in Covered Risk 7, 8.e., 25, 26, 27 or 28.
5.   Failure to pay value for Your Title.
6.   Lack of a right:
   a.  to any land outside the area specifically described and referred to in paragraph 3 of Schedule A; and
   b.  in streets, alleys, or waterways that touch the Land.
   This Exclusion does not limit the coverage described in Covered Risk 11 or 21.
7.   The transfer of the Title to You is invalid as a preferential transfer or as a fraudulent transfer or conveyance under federal bankruptcy, state insolvency, or similar creditors' rights laws.
8.   Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.
9.   Negligence by a person or an Entity exercising a right to extract or develop minerals, water, or any other substances.

## LIMITATIONS ON COVERED RISKS

Your insurance for the following Covered Risks is limited on the Owner's Coverage Statement as follows:
For Covered Risk 16, 18, 19, and 21 Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.
The deductible amounts and maximum dollar limits shown on Schedule A are as follows:

|  | Your Deductible Amount | Our Maximum Dollar Limit of Liability |
|---|---|---|
| Covered Risk 16: | 1% of Policy Amount Shown in Schedule A or $2,500 (whichever is less) | $10,000 |
| Covered Risk 18: | 1% of Policy Amount Shown in Schedule A or $5,000 (whichever is less) | $25,000 |
| Covered Risk 19: | 1% of Policy Amount Shown in Schedule A or $5,000 (whichever is less) | $25,000 |
| Covered Risk 21: | 1% of Policy Amount Shown in Schedule A or $2,500 (whichever is less) | $5,000 |

## 2006 ALTA LOAN POLICY (06-17-06)
### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.   (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to

      (i) the occupancy, use, or enjoyment of the Land;
      (ii) the character, dimensions, or location of any improvement erected on the Land;
      (iii) the subdivision of land; or
      (iv) environmental protection;

   or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
   (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.
2.   Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3.   Defects, liens, encumbrances, adverse claims, or other matters
   (a) created, suffered, assumed, or agreed to by the Insured Claimant;
   (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;

(c) resulting in no loss or damage to the Insured Claimant;
(d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 13, or 14); or
(e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.
4. Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.
5. Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury or any consumer credit protection or truth-in-lending law.
6. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is
(a) a fraudulent conveyance or fraudulent transfer, or
(b) a preferential transfer for any reason not stated in Covered Risk 13(b) of this policy.
7. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the Insured Mortgage in the Public Records. This Exclusion does not modify or limit the coverage provided under Covered Risk 11(b).

The above policy form may be issued to afford either Standard Coverage or Extended Coverage.  In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

## EXCEPTIONS FROM COVERAGE

[Except as provided in Schedule B - Part II,[ t[or T]his policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees or expenses, that arise by reason of:

### [PART I

[The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:
1. (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency  that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.
2. Any facts, rights, interests, or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by  persons in possession of the Land.
3. Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.
4. Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records.
5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.
6. Any lien or right to a lien for services, labor or material not shown by the public records.

### PART II

In addition to the matters set forth in Part I of this Schedule, the Title is subject to the following matters, and the Company insures against loss

or damage sustained in the event that they are not subordinate to the lien of the Insured Mortgage:]

## 2006 ALTA OWNER'S POLICY (06-17-06)
### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1. (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to

   (i) the occupancy, use, or enjoyment of the Land;
   (ii) the character, dimensions, or location of any improvement erected on the Land;
   (iii) the subdivision of land; or
   (iv) environmental protection;

   or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
   (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.
2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3. Defects, liens, encumbrances, adverse claims, or other matters
   (a) created, suffered, assumed, or agreed to by the Insured Claimant;
   (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;

Order Number:  O-SA-5639307
Page Number:  12

(c) resulting in no loss or damage to the Insured Claimant;
(d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 or 10); or
(e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.
4.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is
(a) a fraudulent conveyance or fraudulent transfer, or
(b) a preferential transfer for any reason not stated in Covered Risk 9 of this policy.
5.  Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.


The above policy form may be issued to afford either Standard Coverage or Extended Coverage.  In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:


EXCEPTIONS FROM COVERAGE


This policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees or expenses, that arise by reason of:
[The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

1.  (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency  that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.
2.  Any facts, rights, interests, or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by  persons in possession of the Land.
3.  Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.
4.  Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records.
5.  (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.
6.  Any lien or right to a lien for services, labor or material not shown by the Public Records.
7.  [Variable exceptions such as taxes, easements, CC&R's, etc. shown here.]

**ALTA EXPANDED COVERAGE RESIDENTIAL LOAN POLICY (07-26-10)**
EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.  (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to

(i) the occupancy, use, or enjoyment of the Land;
(ii) the character, dimensions, or location of any improvement erected on the Land;
(iii) the subdivision of land; or
(iv) environmental protection;

or the effect of any violation of these laws, ordinances, or governmental regulations.  This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk  5, 6, 13(c), 13(d), 14 or 16.
(b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 5, 6, 13(c), 13(d), 14 or 16.
2.  Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3.  Defects, liens, encumbrances, adverse claims, or other matters
(a) created, suffered, assumed, or agreed to by the Insured Claimant;
(b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
(c) resulting in no loss or damage to the Insured Claimant;
(d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 16, 17, 18, 19, 20, 21, 22, 23, 24, 27 or 28); or
(e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.
4.  Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.
5.  Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury or any consumer credit protection or truth-in-lending law. This Exclusion does not modify or limit the coverage provided in Covered Risk 26.
6.  Any claim of invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage as to Advances or modifications made after the

Order Number: **O-SA-5639307**
Page Number:  13

Insured has Knowledge that the vestee shown in Schedule A is no longer the owner of the estate or interest covered by this policy. This Exclusion does not modify or limit the coverage provided in Covered Risk 11.

7.  Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching subsequent to Date of Policy. This Exclusion does not modify or limit the coverage provided in Covered Risk 11(b) or 25.

8.  The failure of the residential structure, or any portion of it, to have been constructed before, on or after Date of Policy in accordance with applicable building codes.  This Exclusion does not modify or limit the coverage provided in Covered Risk 5 or 6.

9.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is

    (a) a fraudulent conveyance or fraudulent transfer, or

    (b) a preferential transfer for any reason not stated in Covered Risk 27(b) of this policy.

10. Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.

11. Negligence by a person or an Entity exercising a right to extract or develop minerals, water, or any other substances.

Order Number: **O-SA-5639307**
Page Number: 14

 *First American Title*

## Privacy Information
### We Are Committed to Safeguarding Customer Information

In order to better serve your needs now and in the future, we may ask you to provide us with certain information. We understand that you may be concerned about what we will do with such information - particularly any personal or financial information. We agree that you have a right to know how we will utilize the personal information you provide to us. Therefore, together with our subsidiaries we have adopted this Privacy Policy to govern the use and handling of your personal information.

### Applicability

This Privacy Policy governs our use of the information that you provide to us. It does not govern the manner in which we may use information we have obtained from any other source, such as information obtained from a public record or from another person or entity. First American has also adopted broader guidelines that govern our use of personal information regardless of its source. First American calls these guidelines its Fair Information Values.

### Types of Information

Depending upon which of our services you are utilizing, the types of nonpublic personal information that we may collect include:
- Information we receive from you on applications, forms and in other communications to us, whether in writing, in person, by telephone or any other means;
- Information about your transactions with us, our affiliated companies, or others; and
- Information we receive from a consumer reporting agency.

### Use of Information

We request information from you for our own legitimate business purposes and not for the benefit of any nonaffiliated party. Therefore, we will not release your information to nonaffiliated parties except: (1) as necessary for us to provide the product or service you have requested of us; or (2) as permitted by law. We may, however, store such information indefinitely, including the period after which any customer relationship has ceased. Such information may be used for any internal purpose, such as quality control efforts or customer analysis. We may also provide all of the types of nonpublic personal information listed above to one or more of our affiliated companies. Such affiliated companies include financial service providers, such as title insurers, property and casualty insurers, and trust and investment advisory companies, or companies involved in real estate services, such as appraisal companies, home warranty companies and escrow companies. Furthermore, we may also provide all the information we collect, as described above, to companies that perform marketing services on our behalf, on behalf of our affiliated companies or to other financial institutions with whom we or our affiliated companies have joint marketing agreements.

### Former Customers

Even if you are no longer our customer, our Privacy Policy will continue to apply to you.

### Confidentiality and Security

We will use our best efforts to ensure that no unauthorized parties have access to any of your information. We restrict access to nonpublic personal information about you to those individuals and entities who need to know that information to provide products or services to you. We will use our best efforts to train and oversee our employees and agents to ensure that your information will be handled responsibly and in accordance with this Privacy Policy and First American's Fair Information Values. We currently maintain physical, electronic, and procedural safeguards that comply with federal regulations to guard your nonpublic personal information.

### Information Obtained Through Our Web Site

First American Financial Corporation is sensitive to privacy issues on the Internet. We believe it is important you know how we treat the information about you we receive on the Internet. In general, you can visit First American or its affiliates' Web sites on the World Wide Web without telling us who you are or revealing any information about yourself. Our Web servers collect the domain names, not the e-mail addresses, of visitors. This information is aggregated to measure the number of visits, average time spent on the site, pages viewed and similar information. First American uses this information to measure the use of our site and to develop ideas to improve the content of our site.
There are times, however, when we may need information from you, such as your name and email address. When information is needed, we will use our best efforts to let you know at the time of collection how we will use the personal information. Usually, the personal information we collect is used only by us to respond to your inquiry, process an order or allow you to access specific account/profile information. If you choose to share any personal information with us, we will only use it in accordance with the policies outlined above.

### Business Relationships

First American Financial Corporation's site and its affiliates' sites may contain links to other Web sites. While we try to link only to sites that share our high standards and respect for privacy, we are not responsible for the content or the privacy practices employed by other sites.

### Cookies

Some of First American's Web sites may make use of "cookie" technology to measure site activity and to customize information to your personal tastes. A cookie is an element of data that a Web site can send to your browser, which may then store the cookie on your hard drive.
FirstAm.com uses stored cookies. The goal of this technology is to better serve you when visiting our site, save you time when you are here and to provide you with a more meaningful and productive Web site experience.
----------------------------------------------------------------

### Fair Information Values

**Fairness** We consider consumer expectations about their privacy in all our businesses. We only offer products and services that assure a favorable balance between consumer benefits and consumer privacy.
**Public Record** We believe that an open public record creates significant value for society, enhances consumer choice and creates consumer opportunity. We actively support an open public record and emphasize its importance and contribution to our economy.
**Use** We believe we should behave responsibly when we use information about a consumer in our business. We will obey the laws governing the collection, use and dissemination of data.
**Accuracy** We will take reasonable steps to help assure the accuracy of the data we collect, use and disseminate. Where possible, we will take reasonable steps to correct inaccurate information. When, as with the public record, we cannot correct inaccurate information, we will take all reasonable steps to assist consumers in identifying the source of the erroneous data so that the consumer can secure the required corrections.
**Education** We endeavor to educate the users of our products and services, our employees and others in our industry about the importance of consumer privacy. We will instruct our employees on our fair information values and on the responsible collection and use of data. We will encourage others in our industry to collect and use information in a responsible manner.
**Security** We will maintain appropriate facilities and systems to protect against unauthorized access to and corruption of the data we maintain.

Form 50-PRIVACY (9/1/10)                Page 1 of 1              Privacy Information (2001-2010 First American Financial Corporation)

# EXHIBIT 3

1 | BRAD D. KRASNOFF (State Bar No. 125065)
*BDKTrustee@dgdk.com*
2 | 1900 Avenue of the Stars, 11th Floor
Los Angeles, California 90067-4402
3 | Telephone: (310) 277-0077
Facsimile: (310) 277-5735
4 |
Chapter 7 Trustee
5 |
6 |
7 |

**FILED & ENTERED**

**FEB 20 2018**

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY wesley    DEPUTY CLERK

8 |

# UNITED STATES BANKRUPTCY COURT

9 |

## CENTRAL DISTRICT OF CALIFORNIA

10 |

### LOS ANGELES DIVISION

| | |
|---|---|
| 11  In re | Case No. 2:17-bk-18768-BB |
| 12  SUNG HEE RYOO, | Chapter 7 |
| 13 | **ORDER APPROVING TRUSTEE'S APPLICATION TO EMPLOY REAL ESTATE BROKERS AND TO ENTER INTO EXCLUSIVE LISTING AGREEMENT [DOC. NO. 20]** |
| 14 | |
| 15  Debtor. | |
| 16 | [No Hearing Required] |

17 |

18 |        Brad D. Krasnoff, the Chapter 7 trustee (the "Trustee") for the estate of Sung Hee Ryoo

19 | (the "debtor"), has filed his application to employ Coldwell Banker Residential Broker ("Coldwell

20 | Banker"), through its agents, William Friedman and Jane Schore (the "Broker"), as his real estate

21 | broker, and to enter into an exclusive listing agreement (*docket no. 20*) (the "application"), with

22 | respect to real property of this estate consisting of a condominium unit more commonly described

23 | as 5125 Harold Way, Unit 108, Los Angeles, California (the "Property"). It appears from the

24 | application that it is necessary that the Trustee employ the Broker, that said Broker represents no

25 | interest adverse to the debtor, the estate or any creditors in the matters upon which the Broker is to

26 | be engaged, and that the employment of the Broker is in the best interest of the estate. It also

27 | appears that due and proper notice of the application was given to the debtor, her counsel, the

28 | United States Trustee, the 20 largest unsecured creditors (only 5 creditors listed), and all parties in

interest.  It also appears that no objections or requests for hearing with respect to the application

have been filed.  It appearing that good cause exists,

**IT IS ORDERED:**

1.    The application is **GRANTED** in its entirety.

2.    The Trustee is authorized under 11 U.S.C. § 328 to employ the Broker as the

estate's real estate broker herein pursuant to the terms and conditions set forth in the application.

3.    The Trustee is authorized to enter into the exclusive listing agreement with the

Broker upon the terms and conditions set forth in the application.

4.    The Trustee is authorized to extend, modify (except as to commission), or terminate

that agreements, in his sole discretion, without further notice or approval of the Court.

### ###

Date: February 20, 2018

Sheri Bluebond
United States Bankruptcy Judge

# EXHIBIT 4

1  ERIC P. ISRAEL (State Bar No. 132426)
   *eisrael@dgdk.com*
2  SONIA SINGH (State Bar No. 311080)
   *ssingh@dgdk.com*
3  DANNING, GILL, DIAMOND & KOLLITZ, LLP
   1900 Avenue of the Stars, 11th Floor
4  Los Angeles, California 90067-4402
   Telephone:   (310) 277-0077
5  Facsimile:   (310) 277-5735

6  Attorneys for Brad D. Krasnoff, Chapter 7 Trustee

7

8              UNITED STATES BANKRUPTCY COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                 LOS ANGELES DIVISION

11  In re                                Case No. 2:17-bk-18768-BB

12  SUNG HEE RYOO,                       Chapter 7

13         Debtor.                       STIPULATION BETWEEN TRUSTEE
                                         AND DEBTOR REGARDING ESTATE'S
14                                       INTEREST IN REAL PROPERTY

15                                       [No hearing required]

16

17         Brad D. Krasnoff, the Chapter 7 trustee (the "Trustee") for the bankruptcy estate of Sung

18  Hee Ryoo (the "Debtor"), on the one hand, and the Debtor, on the other hand, by and through their

19  respective counsel, hereby request that the Court approve the within stipulation between the parties:

20

21                                RECITALS

22         1.      On or about July 19, 2017, the Debtor commenced this case by filing a voluntary

23  petition for relief (the "Petition") under Chapter 7 of title 11 of the United States Code.

24         2.      Brad D. Krasnoff thereafter accepted appointment as the Chapter 7 Trustee for the

25  Debtor's bankruptcy estate (the "Estate") and continues to serve in that capacity for the benefit of

26  the Estate and its creditors.

27         3.      According to the Debtor's *Schedule A/B: Property* filed with the Petition, the Debtor

28  owns a condominium commonly known as 5125 Harold Way, Unit 108, Los Angeles, California

1468763.1  1718768                          1

1   90027-0000 (the "Property"). The Debtor scheduled the value of the Property at approximately

2   $405,000.

3       4.    The Debtor's *Schedule C: The Property You Claim as Exempt* filed with the Petition

4   asserts an exemption in the Property under C.C.P. § 704.730 in the amount of $100,000 (the

5   "Exemption").

6       5.    It appears that there will not be sufficient realizable net equity in the Property to pay

7   the Exemption in full and still generate net funds for the Estate.

8       6.    The Trustee and the Debtor have reached an agreement regarding the Trustee's sale

9   of the Property and the Exemption.

10   STIPULATION

11       NOW, THEREFORE, it is stipulated and agreed between the Trustee and the Debtor as

12   follows:

13       A.    The Debtor shall cooperate with the Trustee's marketing and sale of the Property.

14       B.    The Trustee and the Debtor will split the net proceeds from the sale of the Property,

15   after costs of sale of the Property are deducted (the "Net Equity"), one-half each, not to exceed the

16   amount of $100,000 for the Debtor.

17       C.    The Debtor agrees to limit her Exemption to her one-half share of the Net Equity as

18   described in paragraph B above.

19

20   DATED: February *23*, 2018          DANNING, GILL, DIAMOND & KOLLITZ, LLP

21

22

23                                  By: _____
                                       SONIA SINGH

24                                     Attorneys for Brad D. Krasnoff,
                                       Chapter 7 Trustee

25

26

27

28                        *[Signatures continued on next page]*

1468763.1  1718768                          2

1   DATED: February 23, 2018      LAW OFFICES OF RAYMOND J. SEO

2

3

4                        By:                                     

                                 RAYMOND J. SEO

5                                 Attorneys for Debtor, Sung Hee Ryoo

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

J468763.1  1718768

# EXHIBIT 5

1   ERIC P. ISRAEL (State Bar No. 132426)
    *eisrael@dgdk.com*
2   SONIA SINGH (State Bar No. 311080)
    *ssingh@dgdk.com*
3   DANNING, GILL, DIAMOND & KOLLITZ, LLP
    1900 Avenue of the Stars, 11th Floor
4   Los Angeles, California 90067-4402
    Telephone:    (310) 277-0077
5   Facsimile:    (310) 277-5735

6   Attorneys for Brad D. Krasnoff, Chapter 7 Trustee

| FILED & ENTERED |
| --- |
| FEB 26 2018 |
| CLERK U.S. BANKRUPTCY COURT |
| Central District of California |
| BY wesley    DEPUTY CLERK |

7

8                    **UNITED STATES BANKRUPTCY COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10                        **LOS ANGELES DIVISION**

11   In re                                    Case No. 2:17-bk-18768-BB

12   SUNG HEE RYOO,                           Chapter 7

13           Debtor.                          **ORDER APPROVING STIPULATION**
                                              **BETWEEN TRUSTEE AND DEBTOR**
14                                            **REGARDING ESTATE'S INTEREST IN**
                                              **REAL PROPERTY**
15
                                              [No hearing required]
16

17

18           Brad D. Krasnoff, the Chapter 7 trustee (the "Trustee") for the bankruptcy estate of Sung

19   Hee Ryoo (the "Debtor"), on the one hand, and the Debtor, on the other hand, having submitted

20   their *Stipulation Between Trustee and Debtor Regarding Estate's Interest in Real Property* [Docket

21   No. 26] (the "Stipulation"), and good cause appearing, it is

22           **ORDERED THAT:**

23           1.      The Stipulation is **APPROVED** in its entirety.

24           2.      The Debtor shall cooperate with the Trustee's marketing and sale of the

25   condominium commonly known as 5125 Harold Way, Unit 108, Los Angeles, California, 90027-

26   0000 (the "Property").

27           3.      From the net proceeds of the sale of the Property, after costs of sale of the Property

28   are deducted (the "Net Equity"), the Trustee and the Debtor shall split the Net Equity one-half

1469474.1  1718768A                                    1

1  each, not to exceed the amount of $100,000 for the Debtor.

2      4.      The Debtor's claimed exemption in the Property under C.C.P. § 704.730 shall be

3  limited to one-half of the Net Equity as described in paragraph 3 above.

4                                    ###

Date: February 26, 2018

Sheri Bluebond
United States Bankruptcy Judge

1469474.1  1718768A                    2

52

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 1900 Avenue of the Stars, 11th Floor, Los Angeles, CA 90067-4402.

A true and correct copy of the foregoing document entitled (*specify*):  TRUSTEE'S NOTICE OF MOTION AND MOTION TO:  (1) APPROVE SALE OF REAL PROPERTY COMMONLY KNOWN AS 5125 HAROLD WAY #108, LOS ANGELES, CALIFORNIA FREE AND CLEAR OF LIENS AND CLAIMS, AND (2) AUTHORIZE PAYMENT OF REAL ESTATE BROKERS' COMMISSIONS; MEMORANDUM OF POINTS AND AUTHORITIES, DECLARATIONS OF BRAD D. KRASNOFF AND JANE SCHORE AND REQUEST FOR JUDICIAL NOTICE IN SUPPORT THEREOF  will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On  March 8, 2018  I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page.

**2. SERVED BY UNITED STATES MAIL**:  On  March 8, 2018 , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (**state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on  March 8, 2018 , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

VIA PERSONAL DELIVERY ALSSI – TO BE DELIVERED BY 03/09/18
The Honorable Sheri Bluebond
U.S. Bankruptcy Court
Roybal Federal Building
Bin outside of Suite 1534
255 E. Temple Street
Los Angeles, CA 90012

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| March 8, 2018 | Gloria Ramos | |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

ADDITIONAL SERVICE INFORMATION (if needed):

## 1. **SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**

Eric P Israel on behalf of Trustee Brad D Krasnoff (TR)
eisrael@dgdk.com, danninggill@gmail.com;eisrael@ecf.inforuptcy.com

Brad D Krasnoff (TR)
BDKTrustee@dgdk.com, bkrasnoff@ecf.epiqsystems.com;DanningGill@gmail.com

Raymond J Seo on behalf of Debtor Sung Hee Ryoo
rjseo75@yahoo.com

Sonia Singh on behalf of Trustee Brad D Krasnoff (TR)
ss@dgdk.com, DanningGill@gmail.com,SSingh@ECF.Inforuptcy.com

United States Trustee (LA)
ustpregion16.la.ecf@usdoj.gov

## 2. **SERVED BY U.S. MAIL**

**Debtor**
Sung Hee Ryoo
5125 Harold Way, Unit 108
Los Angeles, CA 90027

**Buyers**
Rebecca Lee Revenig
Noah Alexander Dorsey
1440 N. Alta Vista
Los Angeles, CA 90046

**Jane Schore, Real Estate Broker**
Coldwell Banker
1917 Hillhurst Ave
Los Angeles, CA  90027

**William Friedman, Real Estate Broker**
Coldwell Banker
8840 S. Sepulveda Blvd.
Los Angeles, CA  90045

**Los Angeles County Treasurer and Tax Collector**
PO Box 54110
Los Angeles, CA 90054-0110

**County of Los Angeles Tax Collector**
Treasurer and Tax Collector
P.O. Box 512102
Los Angeles, CA 90051-0102

**Nationstar Mortgage LLC**
Agents for Service of Process
Corporation Service Company
Lawyers Incorporating Service
2710 Gateway Oaks Drive, Ste 150N
Sacramento, CA 95833-3505

**Nationstar Mortgage LLC**
Agents for Service of Process
Corporation Service Company
251 Little Falls Drive
Wilmington, DE  19808

**Suneast Homeowners Association**
Agent for Service of Process
5125 Harold Way #304
Los Angeles, CA  90027

**Suneast Homeowners Association**
5125 Harold Way #206
Los Angeles, CA  90027
Attn: Vartuhi Vantasian

**Collin Johnson, Broker**
REMAX Olson & Associates, Inc.
11141 Tamps Avenue
Porter Ranch, CA  91326-2254

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                          **F 9013-3.1.PROOF.SERVICE**